## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALLIED WORLD INSURANCE** | : | **CIVIL ACTION** |
| **COMPANY** | : | |
| | : | |
| v. | : | **NO. 19-2467** |
| | : | |
| **PERDOMO INDUSTRIAL, LLC,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                   **November 13, 2019**

A building contractor and its principals ignoring a complaint filed in this Court risk default in the hoping of delaying or avoiding payments possibly due under a contract. They should not be rewarded for their delay tactic in any sense. We balance this interest in finality with our paramount concern of ensuring we resolve cases on the merits absent a finding of culpable conduct by defendants who refuse to participate in litigation. We today address commercial parties' failure to respond to a complaint seeking to collect millions of dollars based upon a fraudulent conveyance theory claiming the contractor owing millions of dollars allegedly moved assets to the present defendants to avoid payment on a judgment in this Court. The defendants seemingly ignored our case until after we entered default judgment. Their delay tactic may have bought some time but not forgiveness of the claim. Facing a specific damages award, they finally retained counsel, blamed their delay on time necessary to obtain counsel in this District, and raised defenses concerning our personal jurisdiction over them in Virginia and the proponents of venue of this Court, as well as conclusory fact defenses. Mindful of our overriding concern to decide cases on their merits, we grant the Defendants' motion to set aside the default judgment and immediately proceed to resolving this case on its merits.

## I.    Alleged facts

In an April 3, 2015 Indemnity Agreement, Allied World Insurance Company agreed to issue payment and performance bonds on behalf of Perdomo Industrial, LLC.[1]  The Indemnity Agreement listed Perdomo Industrial as the "Principal," and both Perdomo Industrial and Orlando Perdomo, Jr.[2] as "Indemnitors" "agree[ing] to, *inter alia*, save harmless and indemnify Allied World for any and all liability, loss, damages, costs, counsel and attorney fees incurred by Allied World by reason or in consequence of having issued any bonds on behalf of [Perdomo] Industrial."[3]

As obligated under the Indemnity Agreement, Allied World issued a $2,184,275.00 bond naming Perdomo Industrial as "Principal" and Hensel Phelps Construction Company as "Obligee," after Perdomo Industrial and Hensel Phelps entered into a subcontract for construction services on the "Freedom Plaza" project in Washington, D.C.[4]  Allied World guaranteed Perdomo Industrial's performance of the subcontract.[5]  On December 16, 2016, Hensel Phelps noticed Perdomo Industrial of a default on its obligations under the subcontract.[6] On December 19, 2016, Hensel Phelps gave Orlando Perdomo, Jr. and Perdomo Industrial a formal Notice of Termination and demanded—in a separate letter to Allied World— Allied World's performance under the Bond.[7] On January 30, 2017, Allied World demanded Orlando Perdomo, Jr. and Perdomo Industrial pay $2,750,000 in collateral under the terms of their Indemnity Agreement.[8]

On February 27, 2017, Hensel Phelps filed for arbitration before the American Arbitration Association against Perdomo Industrial and Allied World, seeking $2,184,275 in damages under the subcontract and the performance Bond.[9]  In August 2018, the arbitration panel found Allied World liable to Hensel Phelps for $3,056,095.05 to resolve claims under the subcontract and Bond issued to Orlando Perdomo, Jr. and Perdomo Industrial.[10] In September 2018, Allied World paid

2

$3,056,095.05 to Hensel Phelps, "representing the recoverable damages awarded against Allied World in the Arbitration."[11]

### *Allied World sues Orlando Perdomo, Jr. and Perdomo Industrial for indemnification.*

During the progress through the arbitration proceedings, Allied World sued Orlando Perdomo, Jr. and Perdomo Industrial in this Court under the April 3, 2015 Indemnity Agreement.[12] On September 25, 2018, we entered Judgment in the indemnity suit in the amount of $4,010,344.92 against Orlando Perdomo, Jr. and Perdomo Industrial and in favor of Allied World.[13] Neither Orlando Perdomo, Jr. nor Perdomo Industrial took steps to satisfy this Judgment.

Allied World believed they instead began fraudulently conveying assets to avoid the our Judgment.[14] Allied World discovered these allegedly fraudulent conveyances during the course of their indemnity suit and through discovery conducted after we entered Judgment.[15] The allegedly fraudulent transfers occurred after Hensel Phelps issued the formal Notice of Termination to Orlando Perdomo, Jr. and Perdomo Industrial; after Allied World sued Orlando Perdomo, Jr. and Perdomo Industrial for damages under the Indemnity Agreement; and, after Allied World "expressly denied Industrial's request that the Surety pay Industrial's legal fees associated with the [Arbitration] proceedings."[16]

### *Allied World now sues Orlando Perdomo, Sr.; Perdomo Industrial, LLC; Perdomo National Wrecking, LLC; Perdomo Development Corporation; and Perdomo Realty, LLC.*

Allied World now sues Orlando Perdomo, Sr., a Virginia resident, and Perdomo Industrial, LLC, Perdomo National Wrecking, LLC,[17] Perdomo Development Corporation,[18] and Perdomo Realty, LLC,[19] all Virginia entities, under the Pennsylvania Uniform Fraudulent Transfer Act.[20] In its amended Complaint, Allied World argued the alleged fraudulently transferred funds should have been used to satisfy this Court's Judgment, and "[t]he depletion of funds through fraudulent

3

conveyances from Industrial to [Wrecking, Development, Realty, and Mr. Perdomo] was done to hinder, delay and obstruct Allied World."[21]

### *The Defendants ignored this case until moving to set aside the default.*

On August 27, 2019, as Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo had not yet responded to Allied World, we directed Allied World it "may file a request with the clerk for entry of a default in accordance with Rule 55 of the Federal Rules of Civil Procedure" by September 19, 2019 if Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo did not file a pleading "on or before September 9, 2019."[22] On September 8, 2019, Anwar Minni, Wrecking's Chief Financial Officer, requested a thirty-day extension to respond to Allied World's amended Complaint, as they "[were] in the process of retaining an attorney to represent [them]."[23] On September 11, 2019, we granted an extension requiring them to obtain counsel and respond to Allied World's amended Complaint no later than October 4, 2019.[24] When Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo still had not responded by October 4, 2019 as required by our September 11, 2019 Order, Allied World moved for Entry of Default on October 7, 2019 under Federal Rule of Civil Procedure 55(a).[25] Within two weeks of our Entry of Default, Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo finally obtained counsel. On October 25, 2019—twenty-one days following the response date under our September 11, 2019 Order—the Defendants moved to set aside the default.[26]

## II.  Analysis

Defendants move to set aside the default caused by their failure to participate arguing Allied World will not suffer prejudice if the Entry of Default is set aside, as no loss of evidence will occur, nor will Allied World's ability to pursue its claims be impaired.[27] They argue they have meritorious defenses because we lack "personal jurisdiction over them, this is an improper venue,

and the alleged fraudulent transfers were not fraudulent."[28] They also argue their delay "did not

constitute 'culpable misconduct.'"[29] While their conduct raises questions as to respect for the

judicial system, we agree and set aside the entry of default against Perdomo Industrial, Wrecking,

Development, Realty, and Mr. Perdomo.

"The time between the entry of default and the entry of default judgment provides the

defendant with an opportunity to move, pursuant to Rule 55(c), to vacate the default."[30] "[Rule]

55 governs the entry of default judgment"[31] and authorizes us to set aside the entry of default for

"good cause shown."[32] "[I]n exercising [this] discretion in granting or denying a motion to set

aside a default under Rule 55(c)" we must consider the following factors: "(1) whether the plaintiff

will be prejudiced; (2) whether the defendant has a meritorious defense; [and,] (3) whether the

default was the result of the defendant's culpable conduct."[33] "Generally, courts look upon the

default procedure with disfavor because the interests of justice are best served by obtaining a

decision on the merits," [34] and will set aside a default "where a moving party acts with reasonable

promptness and alleges a meritorious defense."[35] Our Court of Appeals instructs it "does not favor

the entry of defaults . . . [and] require[s] doubtful cases to be resolved in favor of the party moving

to set aside the default judgment 'so that cases may be decided on their merits.'"[36]

### A.     Allied World will not suffer prejudice by setting aside the default.

Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo argue "[Allied

World] will not suffer prejudice if the Entry of Default is set aside, as no loss of evidence will

occur, nor will [Allied World's] ability to pursue its claims [against them] be impaired."[37] We

agree.

The burden is on Allied World today to "demonstrate[e] that [its] claim 'would be

materially impaired because of the loss of evidence, an increased potential for fraud or collusion,

substantial reliance on the entry of default, or other substantial factors'" establishing it would be prejudiced by our setting aside the entry of default.[38] "A plaintiff is prejudiced where the loss of relevant evidence or some other occurrence impairs the plaintiff's ability to pursue the claim."[39] "Delays in [p]laintiff's potential recovery or potential expenses incurred from litigating the matter on the merits do not constitute the kind of prejudice the Court should consider in deciding whether to set aside an entry of default,"[40] and "hav[ing] to litigate an action on the merits rather than proceed by default does not constitute prejudice" toward a plaintiff.[41] "Delay in obtaining satisfaction on a claim rarely establishes the degree of prejudice sufficient to preclude setting aside the default, which invariably has been entered at an early stage of the proceedings."[42]

Allied World argues it would be prejudiced if we set aside the entry of default against Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo, as "this is a saga which started in December of 2016 and continues through this date."[43] Allied World then lists various "wrongs" committed by Perdomo Industrial, Wrecking, Mr. Perdomo, and Orlando Perdomo, Jr., but fails to identify how these alleged bad acts are prejudicial to it.[44] Allied World focuses on changes made to the Perdomo Industrial and Wrecking websites and to equipment ownership and use in arguing prejudice.[45] Without noting why this alleged conduct would materially impair its ability to pursue this claim, Allied World fails to demonstrate prejudice as under Rule 55(c).

As Allied World has not met its burden in establishing it would be prejudiced by us setting aside the entry of default, this factor weighs in favor of setting aside the entry of default.

## B. Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo assert meritorious defenses.

Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo argue they have meritorious defenses because we lack "personal jurisdiction [over them], the Eastern District of Pennsylvania is an improper venue, and the alleged fraudulent transfers were not fraudulent."[46]

6

We agree Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo assert meritorious defenses on the basis of personal jurisdiction and venue, but not on the basis of whether the transfers were fraudulent.

Our Court of Appeals directs defaulted parties must satisfy a more stringent standard than merely alleging a defense.[47] The defendant must "set forth with some specificity the grounds for [its] defense," then requires the court to "evaluate that defense to determine whether it is meritorious."[48] A defense is considered meritorious when "allegations of defendant's answer, if established on trial, would constitute a complete defense to the action."[49] A defendant does not have to "prove beyond a shadow of a doubt that it will win at trial," as "[i]t is sufficient for the defendant to show that its defense is not facially unmeritorious."[50] "Although [having a meritorious defense] is important in Rule 55(c) motions, the [c]ourt notes that other courts within this Circuit have previously held that a failure to satisfy this factor is not fatal to a defendant's motion to vacate default."[51]

"Defendants are not required to prove their case at this stage of the litigation"[52]—"if they 'can later prove either that venue is improper'" or lack of personal jurisdiction, their "defenses could well defeat [Allied World's] claims."[53] In *American Shoring, Inc. v. Miniscalco Construction*, Judge Padova held, regardless of whether the defendants' defenses would be successful based on the evidence presented at trial, the defendants put forth a facially meritorious defense in arguing venue is improper, which is all the Court requires at this stage in the proceedings.[54] In *AllGood Entertainment, Inc. v. Gridiron Video*, Judge Hammer of the District of New Jersey held "a lack of personal jurisdiction . . . would constitute a meritorious defense,"[55] as the court has "an affirmative duty to look into its jurisdiction both over the subject matter and the parties" before entering default.[56]

Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo may be inaccurate as to our personal jurisdiction as we may find specific personal jurisdiction over a transferee of fraudulent conveyances under the "effects test."[57] Because fraudulent conveyances are considered "a species of the intentional tort of fraud," our Court of Appeals instructs "defendant[s] 'committ[ing] an intentional tort outside the forum, the unique effects of which caused damage to the plaintiff within the forum,' ha[ve] established [the requisite minimum] contacts" establishing personal jurisdiction under the effects test.[58] This possible legal finding does not defeat lack of personal jurisdiction as a meritorious defense at this stage under the "good cause" standard for Rule 55(c). It is a "meritorious" defense which warrants further review.

Allied World alleges Defendants' participation in the underwriting process connects them to Pennsylvania.[59] But Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo assert they "were not parties to any agreement with Allied, and did not participate in the underwriting process."[60] Rather the "alleged fraudulent transfers occurred outside of Pennsylvania, and the construction project which necessitated the issuance of the performance bond was in Washington, D.C."[61] Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo argue these allegations support an absence of general relations with Pennsylvania, specific jurisdiction, and purposeful availment. They also argue these allegations demonstrate no "substantial part of the events or omissions giving rise to the claim occurred [in Pennsylvania], [n]or [is] a substantial part of property that is the subject of the action" located in Pennsylvania, making venue improper.[62] Because Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo support their defenses with allegations which, if proven at trial, would act as complete defenses to Allied World's action against them, they are considered facially meritorious under the Rule 55(c) standard.

8

Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo's defense of "the alleged fraudulent transfers were not fraudulent"[63] does not constitute a meritorious defense, as it is based on mere denial and conclusory language.[64] But as they assert two facially meritorious defenses—lack of personal jurisdiction and improper venue—this factor weighs in favor of setting aside the entry of default against them.

## C.   Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo did not act culpably in allowing default.

Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo argue their delay in responding to the current action "did not constitute 'culpable misconduct.'"[65] Though their conduct throughout their defending this action is plainly indicative of a "lax attitude" toward this litigation, we agree the present record offers no basis to find culpable misconduct.

"A defendant's conduct is culpable where he or she 'act[s] willfully or in bad faith,'"[66] which requires "more than mere negligence."[67] "Willful or bad-faith conduct can be established when a defendant purposefully declines to fulfill [its] responsibility to file a response with the Court."[68] "When a defendant 'demonstrate[s] negligence that had a dilatory result, but . . . does not demonstrate dilatory intent or bad faith,' the entry of default was not the result of inexcusable conduct by the defendant."[69] "In this Circuit, '[e]ven where neglect is inexcusable, and where the court cannot condone a defendant's failure to respond to a lawsuit for an extended period of time, culpable conduct warranting the refusal to set aside default must rise to the level of "fragrant bad faith," and "callous disregard of responsibility."'"[70] "The record must contain evidence affirmatively suggesting culpable conduct; the court should not infer the requisite willfulness or bad faith from the mere delay itself."[71]

In *Gross v. Weinstein, Weinburg & Fox, LLC*, Chief Judge Stark of the District of Delaware concluded the defendants acted culpably where they failed to file an answer for two-plus years

9

after the court denied their motion to dismiss, ignored court orders and discovery deadlines, and "show[ed] no indication of a willingness or desire to meet their obligations to move this case forward toward a resolution on the merits."[72] Chief Judge Stark considered "[t]his pattern of ignoring filings by [p]laintiffs and orders from the [c]ourt" beyond mere negligence with defendants failing to provide "any satisfactory explanation" for their behavior.[73] In *Hancock v. A&R Flag Car Service*, Judge Stengel similarly concluded defendants acted culpably where "they preferred to shirk their responsibility of filing responsive pleadings to the plaintiffs' complaint and motions, to ignore several court Orders, and to refuse to participate in post-judgment discovery," blaming their lack of respect for the adversarial process on one defendant's illness.[74]

Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo seemingly lack respect for our adversarial process as evidenced by ignoring our Order requiring they obtain counsel and respond to Allied World's Complaint no later than October 4, 2019. But unlike in *Gross* and *Hancock*, Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo did not demonstrate a pattern of willful or bad faith conduct this standard requires—though they are close to doing so. Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo admittedly had difficulty obtaining counsel in an unfamiliar jurisdiction and requested an extension to respond to Allied World's Complaint. We granted an extension to obtain counsel and file a response, which Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo ignored and proceeded to act on their own timeline. Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo contend their recent delay resulted from their inability to obtain counsel.[75] There is a short period of time since Allied World's filing of the amended Complaint. They wish to proceed with litigation as demonstrated by their obtaining counsel and moving to set aside the entry of default within two weeks of our entering the default against them. We cannot

conclude they acted with bad faith in causing delay as opposed to negligence which led to a dilatory result.

While we find Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo did not engage in the type of "flagrant bad faith" or "callous disregard of responsibility" amounting to culpable conduct and requiring we deny their motion to set aside default, their conduct raises questions of negligence by the clients. We will not tolerate further dilatory conduct or disregard for this Court's procedures under Federal Rule 1.

## III.  Conclusion

As all three "good cause" factors under Rule 55(c) weigh in favor of setting aside the entry of default and acknowledging our Circuit's strong disfavor of default over deciding a case on its merits, we now grant Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo's motion to set aside the entry of default. Allied World has not met its burden in establishing it would be prejudiced by us setting aside the entry of default against Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo. Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo assert two meritorious defenses—lack of personal jurisdiction and improper venue. While we find Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo did not engage in the type of culpable conduct requiring we deny their motion to set aside default, we will not tolerate any further dilatory conduct or disregard for this Court's procedures.

---

[1] ECF Doc. No. 4 at ¶¶ 14–15.

[2] Though Allied World "has objected to [Orlando Perdomo, Jr.'s] discharge pursuant to 11 U.S.C. § 727" and "challenged the dischargeability of [his] debts under 11 U.S.C. § 523," Orlando Perdomo, Jr. is not a Defendant in this instant matter. *Id.* at ¶¶ 51–53.

[3] *Id.* at ¶ 14–15.

11

[4] *Id.* at ¶ 16.

[5] *Id.*

[6] *Id.* at ¶ 17.

[7] *Id.* at ¶¶ 18–19.

[8] *Id.* at ¶ 19.

[9] *Id.* at ¶ 20.

[10] *Id.* at ¶ 21.

[11] *Id.* at ¶ 22.

[12] *Id.* at ¶¶ 14, 19, 23. The indemnity suit is docketed at No. 17-3027. *Id.* at ¶ 23.

[13] *Id.* at ¶ 24.

[14] *Id.* at ¶¶ 26–27. Allied World alleges Perdomo Industrial "transferred approximately $600,000 in equipment to [Perdomo National Wrecking, LLC] via an Equipment Purchase Agreement [] for a total sum of $1.00" on March 20, 2017—"less than a month after the [Arbitration] Proceedings had commenced and within weeks after the aforementioned demand for collateral was issued to the Indemnitors." *Id.* at ¶¶ 29–30. Allied World alleges in February 2017, "Industrial conveyed $300,000 to Orlando Perdomo, Sr.," and "[i]n 2017 and 2018, [Wrecking] funds were wrongfully diverted to pay for [Orlando Perdomo, Jr.'s] personal debts . . . ." *Id.* at ¶¶ 40, 44. Allied World alleges Orlando Perdomo, Sr. "transferred in excess of $176,800 from [Wrecking]" from March 2017 through December 2018, as well as a parcel of land "valued at approximately $653, 400" from Realty to Development between June 2017 and July 2017. *Id.* at ¶¶ 45, 49–50.

[15] *Id.* at ¶ 26.

[16] *Id.* at ¶¶ 27–28.

[17] "[Orlando Perdomo, Jr.] and [Mr. Perdomo] just ceased operating as 'Perdomo Industrial' and began working under the name 'Perdomo National Wrecking' using the exact same equipment owned by Industrial." *Id.* at ¶ 39.

[18] "In July of 2017, [Orlando Perdomo, Jr.] and [Mr. Perdomo] formed Development." *Id.* at ¶ 47.

[19] "In July of 2017, [Orlando Perdomo, Jr.] and [Mr. Perdomo] formed Realty," and "[p]ursuant to submissions made by [Orlando Perdomo, Jr.] in the United States Bankruptcy Court for the Eastern District of Virginia, Development owns 100% of Realty." *Id.* at ¶¶ 46, 48.

[20] ECF Doc. No. 25 at ¶¶ 1–2.

[21] ECF Doc. No. 4 at ¶ 54.

[22] ECF Doc. No. 11 at p. 1.

[23] ECF Doc. No. 12. at p. 1.

[24] ECF Doc. No. 13 at p. 1.

[25] ECF Doc. No. 14 at p. 1; ECF Doc. No. 15 at ¶¶ 9–10.

[26] ECF Doc. No. 25 at p. 15.

[27] *Id.* at ¶ 20.

[28] *Id.* at ¶ 21.

[29] *Id.* at ¶ 22.

[30] *U.S. v. Mulvenna*, 367 F. App'x 348, 350 (3d Cir. 2010) (internal citation omitted).

[31] *State Bank & Tr. Co. v. Philly Wholesale, LLC*, No. 16-5508, 2017 WL 3279023, at *3 (E.D. Pa. Aug. 2, 2017).

[32] Fed. R. Civ. P. 55(c); *see Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982). "[T]he factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

[33] *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984).

[34] *Jackson v. Delaware County*, 211 F.R.D. 282, 283 (E.D. Pa. 2002); *see Rios v. Marv Loves 1*, No. 13-1619, 2015 WL 5161314, at *3 (E.D. Pa. Sept. 2, 2015) ("In general, default judgments are disfavored because they have the effect of preventing a case from being decided on its merits.").

[35] *Jackson*, 211 F.R.D. at 283 (quoting *Consolidated Masonry & Fireproofing, Inc. v. Wagman Construction Corp.*, 383 F.2d 249, 251 (4th Cir. 1967)).

[36] *$55,518.05 in U.S. Currency*, 728 F.2d at 194–95 (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir. 1951)).

[37] ECF Doc. No. 25 at ¶ 20.

[38] *Sunoco, Inc. (R & M) v. Global Recycling & Demolition, LLC*, 300 F.R.D. 253, 256 (E.D. Pa. 2014) (quoting *U.S. ex rel. Construction Hardware, Inc. v. Patterson*, No. 12-3285, 2013 WL 5356851, at *1 (E.D. Pa. Sept. 24, 2013)) (additional citations omitted).

[39] *Jackson*, 211 F.R.D. at 283 (citing *Feliciano*, 691 F.2d at 656–57).

[40] *Sunoco, Inc. (R & M)*, 300 F.R.D. at 256 (quoting *U.S. ex rel. Construction Hardware, Inc.*, 2013 WL 5356851, at *1).

[41] *Jackson*, 211 F.R.D. at 283 (citing *Choice Hotels International, Inc. v. Pennave Associates, Inc.,* 192 F.R.D. 171, 174 (E.D. Pa. 2000)).

[42] *Id.* (citing *Feliciano*, 691 F.2d at 656–57); *see Dizzley v. Friends Rehabilitation Program, Inc.*, 202 F.R.D. 146, 148 (E.D. Pa. 2001) ("Three months delay, without more, does not establish prejudice to [the plaintiff].").

[43] ECF Doc. No. 32-1 at p. 17.

[44] *Id.* at p. 17–18.  Allied World must show setting aside the Entry of Default would result in some sort of loss of evidence, an increased potential for fraud or collusion, substantial reliance on the entry of default, or other substantial factors, prejudicing it to a degree requiring us uphold the Default. *See Sunoco, Inc. (R & M)*, 300 F.R.D. at 256 (quoting *U.S. ex re. Construction Hardware, Inc.*, 2013 WL 5356851, at *1) (additional citations omitted). Without acknowledging any of these effects in its response apart from the lengthiness of the action as a whole, Allied World does not meet its burden of demonstrating prejudice.

[45] *Id.* at p. 17–18.

[46] ECF Doc. No. 25 at ¶ 21.

[47] *In re Subramanian*, 245 F. App'x 111, 115 (3d Cir. 2007) (citations omitted).

[48] *Id.*

[49] *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (quoting Tozer, 189 F.2d at 244).

[50] *American Shoring, Inc. v. Miniscalco Construction, LLC*, No. 15-2612, 2015 WL 5144028, at *3 (E.D. Pa. Aug. 31, 2015) (quoting *Philadelphia Federal Credit Union v. Ankrah*, No. 13-3040, 2014 WL 644998, at *3 (E.D. Pa. Feb. 19, 2014)) (internal quotations omitted); *see Phase 3 Media, LLC v. Drake*, No. 18-3387, 2018 WL 2723879, at *2 (D.N.J. June 6, 2018) ("Defendant need not prove that he will ultimately prevail at trial, but he must demonstrate that he has a facially meritorious defense, not one based on mere denials and conclusory language.").

[51] *Paris v. Pennsauken School District*, No. 12-7355, 2013 WL 4047638, at *5 (D.N.J. Aug. 9, 2013); *see Toy v. Hayman*, No. 07-3076, 2008 WL 5046723, at *3–4 (D.N.J. Nov. 20, 2008) (setting aside entry of default even where defendants did not offer specific facts supporting their meritorious defenses as our Court of Appeals requires, but satisfied the other two factors under the Rule 55(c) test for good cause); *Mike Rosen & Associates P.C. v. Omega Builders, Limited*, 940 F. Supp. 115, 121 (E.D. Pa. 1996) ("[C]ourts in this [C]ircuit seem unwilling to deny the motion to set aside entry of default solely on the basis that no meritorious defense exists[.]").

[52] *American Shoring, Inc.*, 2015 WL 5144028, at *3.

14

[53] *Id.*; *Blue Ribbon Commodity Traders, Inc. v. Quality Foods Distributers*, No. 07–4037, 2007 WL 4323001, at *3 (E.D. Pa. Dec. 11, 2007) (concluding improper venue and payment of allegedly unpaid invoices acted as sufficient defenses for the purpose of setting aside a default judgment).

[54] *American Shoring, Inc.*, 2015 WL 5144028, at *3.

[55] *AllGood Entertainment, Inc. v. Gridiron Video*, No. 09-2406, 2012 WL 395373, at *8 (D.N.J. Feb. 6, 2012).

[56] *Bank of America, N.A. v. Hewitt*, No. 07-4536, 2008 WL 4852912, at *2 (D.N.J. Nov. 7, 2008) (citations omitted). "A court cannot enter default judgment without personal jurisdiction over a defendant; such a judgment is void." *AllGood Entertainment, Inc.*, 2012 WL 395373, at *8 (citing *HICA Education Loan Corp. v. Lepera*, No. 11-960, 2011 WL 3515911, at *2 (D.N.J. Aug. 10, 2011)).

[57] *See, e.g.*, *Gambone v. Lite Rock Drywall*, 288 F. App'x 9, 13–14 (3d Cir. 2008) (finding specific personal jurisdiction over a transferee of fraudulent conveyances under the "effects test"); *Agri-Marketing, Inc. v. ProTerra Solutions, LLC*, No. 17-627, 2018 WL 1444167, at *8 (E.D. Pa. Mar. 22, 2018) ("Here, Agri-Marketing alleges that [d]efendants fraudulently transferred assets for the purpose of preventing Agri-Marketing from collecting a debt. Allegations of this type have been found sufficient to establish jurisdiction under the effects test."); *State Farm Mutual Auto Insurance Co. v. Tz'Doko V'Chesed of Klausenberg*, 543 F. Supp. 2d 424, 430–31 (E.D. Pa. 2008) (finding liquidation of company to avoid Pennsylvania judgment to be "expressly aimed at the forum state"); *C.D. Acquisition Holdings, Inc. v. Meinershagen*, No. 05-1719, 2007 WL 184796, at *5 (W.D. Pa. Jan. 22, 2007) ("Although . . . none of [the defendants'] physical or metaphysical conduct took place *in* Pennsylvania, their conduct certainly was directed *at* Pennsylvania.") (emphasis in original); *In re Akbari-Shahmirzadi*, No. 11-15351, 2016 WL 6783245, at *3 (Bankr. D.N.M. Nov. 14, 2016) ("Courts have held with near uniformity that they have personal jurisdiction to hear fraudulent transfer cases under the *Calder* analysis, even when the transfer is the only contact between the debtor and the foreign transferee.").

[58] *Gambone*, 288 F. App'x at 14 (quoting *IMO Industrial Inc. v. Kiekert AG*, 155 F.3d 254, 256 (3d Cir. 1998) (citations omitted).

[59] "All underwriting activities with respect to the issuance of these bonds occurred in Allied World's Philadelphia offices." ECF Doc. No. 4 at ¶ 15.

[60] ECF Doc. No. 25 at ¶ 17 ("Moving Defendants have thus not 'purposefully availed' themselves of the privileges of conducting business in this forum state . . . .").

[61] *Id.* at ¶¶ 14–17.

[62] 28 U.S.C. § 1391(a)(2).

[63] ECF Doc. No. 25 at ¶ 21.

15

[64] Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo oppose Allied World's motion for specific damages. ECF Doc. No. 33. Though they only provided conclusory arguments and denied the transfers' fraudulent nature in their motion to set aside default, as noted above, they now add arguments establishing alternative reasons for these transfers in opposition to Allied World's motion for specific damages: "[T]he equipment [transferred] was subjected to notes which [Wrecking] was required to pay pursuant to the agreement. At the time of the transfer, the [e]quipment was subjected to notes totaling $534,793.78. The amount owed on some of the [e]quipment exceeded the value of the equipment," which "defeats any argument that the transfer was fraudulent." ECF Doc. No. 33 at p. 5. Though these arguments are helpful to establishing a meritorious defense, Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo had the opportunity to argue these points in their motion to set aside default and failed to do so. As we find Perdomo Industrial, Wrecking, Development, Realty, and Mr. Perdomo assert meritorious defenses of lack of jurisdiction and improper venue, these new arguments supporting the transfers as not being fraudulent do not change our findings today.

[65] *Id.* at ¶ 22.

[66] *Quadratec, Inc. v. Auto Shops, LLC*, No. 17-3780, 2018 WL 637793, at *2 (E.D. Pa. Jan. 31, 2018) (quoting *Feliciano*, 691 F.2d at 657).

[67] *Id.* (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1183 (3d Cir. 1984)).

[68] *Id.* (citations omitted).

[69] *Id.* (quoting *Dizzley*, 202 F.R.D. at 148).

[70] *Hancock v. A&R Flag Car Service*, No. 13-6596, 2017 WL 3675411, at *6 (E.D. Pa. Aug. 24, 2017) (quoting *Blue Ribbon Commodity Traders, Inc.*, 2007 WL 4323001, at *3) (additional citations omitted).

[71] *Spurio v. Choice Security Systems, Inc.*, 880 F. Supp. 402, 405 (E.D. Pa. 1995).

[72] *Gross v. Weinstein, Weinburg & Fox, LLC*, No. 14-786, 2017 WL 5714001, at *3 (D. Del. Nov. 28, 2017).

[73] *Id.* at *3.

[74] *Hancock*, 2017 WL 3675411, at *6.

[75] "[C]ourts within this [Circuit] have previously recognized that a delay due to a defendant's efforts to retain counsel do not amount to culpable conduct." *Paris*, 2013 WL 4047638, at *5; *see Itche Corp. v. G.E.S. Bakery, Inc.*, No. 08-3103, 2008 WL 4416457, at *2 (D.N.J. Sept. 24, 2008) ("[T]he Court finds that G.E.S. was not culpable in failing to respond in a timely manner . . . . Instead, it appears that G.E.S. was delayed by its efforts to retain local counsel[.]").

16